IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDY Q. MOORE, | CASE NO. CV F 10-1165 LJO SMS |
| Plaintiff, | **ORDER ON CDCR DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS** |
| vs. | (Doc. 46.) |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | |
| Defendants. | |

**INTRODUCTION**

Defendant California Department of Corrections and Rehabilitation ("CDCR") and several of its officials and employees[1] seek to dismiss pro se plaintiff Candy Q. Moore's ("Ms. Moore's") employment termination and related claims as inadequately pled and barred by immunities and defenses. Ms. Moore filed no papers to oppose dismissal of the claims subject to defendants' F.R.Civ.P. 12(b)(6) motion to dismiss. This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the June 22, 2011 hearing, pursuant to Local Rule 230(c), (g). For the reasons discussed below, this Court DISMISSES all of Ms. Moore's claims against defendants, except those against CDCR for hostile environment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.

---

[1]   In addition to CDCR, defendants seeking dismissal are Tina Hornbeak ("Warden Hornbeak"), Gloria Colmenero ("Associate Warden Colmenero"), Curtis Mangrum ("Mr. Mangrum"), Judy Tucker ("Director Tucker"), Daun Martin, M.D. ("Dr. Martin"), Marihelen Afonso ("Nurse Afonso") and Walter Miller ("Mr. Miller"). Warden Hornbeak, Associate Warden Colmenero, Mr. Mangrum, Director Tucker, Dr. Martin, Nurse Afonso, and Mr. Miller will be referred to collectively as the "individual defendants." CDCR and the individual defendants will be referred to collectively as "defendants."

# BACKGROUND

## Summary

Ms. Moore is black and a nurse who worked through a nursing registry at a CDCR facility during part of 2007 and early January 2008. Ms. Moore proceeds on her second amended complaint ("SAC") to allege generally that:

1. Defendant coworker Charles Funch ("Mr. Funch")[2] racially harassed Ms. Moore;
2. CDCR did not adequately investigate or remediate the harassment after Ms. Moore reported it; and
3. For filing administrative complaints, Ms. Moore was subjected to retaliation, including changed worked assignments and termination, that is, inability to work at the CDCR facility.

The SAC is unclear and appears to attempt to allege claims of:

1. Hostile work environment under Title VII and the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code, §§ 12900, et seq.;
2. Retaliation under Title VII and FEHA;
3. Discrimination under Title VII and FEHA;
4. Wrongful termination in violation of public policy;[3] and
5. Intentional infliction of emotional distress ("IIED").

The SAC is disorganized and repetitive and difficult to discern. Following defendants' lead, this Court will summarize the SAC's allegations, including those against particular defendants.

---

[2] Mr. Funch is not one of the individual defendants and not subject to defendants' F.R.Civ.P. 12(b)(6) motion to dismiss.

[3] The SAC appears to attempt to allege a claim under *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 172, 164 Cal.Rptr. 839, 842 (1980) ("*Tameny*") ("an employer's traditional authority to discharge an at-will employee may be limited by statute . . . or by considerations of public policy"). There can be no right to terminate for an unlawful reason or purpose that contravenes fundamental public policy. *Silo v. CHW Med. Found.*, 27 Cal.4th 1097, 1104, 119 Cal.Rptr.2d 698, 703 (2002). "It is settled that an employer's discharge of an employee in violation of a fundamental public policy embodied in a constitutional or statutory provision gives rise to a tort action." *Barton v. New United Motor Manufacturing, Inc.*, 43 Cal.App.4th 1200, 1205, 51 Cal.Rptr.2d 328 (1996); *Cabesuela v. Browning-Ferris Industries of Cal., Inc.*, 68 Cal.App.4th 101, 107, 80 Cal.Rptr.2d 60 (1998). The plaintiff's remedy is a common law tort action: "A wrongful act committed in the course of a contractual relationship may afford both tort and contractual relief." *Tameny*, 27 Cal.3d at 174-175, 164 Cal.Rptr. at 843.

**General Allegations**

In April 2007, Ms. Moore was hired to work as a "registry contract nurse" through former defendant Supplemental Health Care, Inc. ("SHC"). During June-October 2007, Ms. Moore "was forced to work two different jobs on two different clinics five times a week. Mr. Funch harassed Ms. Moore "on daily basis" and engaged in "racial misconduct." On November 27, 2007, Ms. Moore "filed charges with E.E.O." for "Discrimination on basis of race retaliation."

In January 2008, Ms. Moore was fired "because she filed charges with EEO." Ms. Moore was fired based on false claims that she had threatened Director Tucker and Nurse Afonso. Ms. Moore was deprived of due process in the absence of an opportunity to defend herself at a committee meeting which addressed allegations that she had made threats against Director Tucker and Nurse Afonso.

**Allegations Against Supervisors Mr. Mangrum, Director Tucker And Dr. Martin**

When Ms. Moore informed her immediate supervisor Mr. Mangrum of Mr. Funch's racial misconduct, Mr. Mangrum told Ms. Moore "that she needed to keep her objections to herself, besides defendant Funch was a state worker, and the plaintiff had no rights." Mr. Mangrum also told Ms. Moore "to hang in there kid."

Although Director Tucker, another immediate supervisor, had never observed Ms. Moore work, Director Tucker "stated in a memo that she observed the plaintiff [sic] work ethics and job performances" and "stated the plaintiff barely did enough to get the job done, and that the plaintiff worked harder at getting out of work."

Mr. Mangrum and Director Tucker failed to take action or provide counseling for Ms. Moore after Ms. Moore reported Mr. Funch's misconduct of punching "his state issued personal alarm on the plaintiff" on August 30, 2007. Mr. Mangrum, Director Tucker and Dr. Martin placed Mr. Funch in the same workplace, Medical Clinic B, after an investigation found that he created a hostile work environment, behaved inappropriately, and lied during the investigation. After Mr. Funch returned to Medical Clinic B, Mr. Mangrum and Director Tucker failed to stop Mr. Funch's continuing harassment and on October 22, 2007, granted Mr. Funch's request to ban Ms. Moore from Medical Clinic B so that Mr. Funch would not need to work with Ms. Moore.

After Ms. Moore telephoned another supervisor for a copy of the letter banning Ms. Moore from

Medical Clinic B, Director Tucker telephoned Ms. Moore at her residence "trying to intimidate the plaintiff stating she would be recording the plaintiff, and that the plaintiff would say that she is aware of the note and . . . [of] Funch being placed back to work with the plaintiff." Director Tucker refused Ms. Moore's request for a personal meeting and stated that Ms. Moore was "just registry" with no need to talk to her in person. Director Tucker continued to telephone Ms. Moore's residence "several times." Because Ms. Moore filed an EEO charge of discrimination, Director Tucker "called plaintiffs [sic] house numerous times trying to intimidate plaintiff, by telling the plaintiff she is being recorded over the phone, and that the plaintiff better lie and say she's aware of the defendant Funch, being placed back on the yard and that the plaintiff agreed that, there was no problem."

After the supervisors learned of Ms. Moore's EEO charge, Mr. Mangrum told Ms. Moore to talk to Nurse Afonso about a change in Ms. Moore's work shift and Nurse Afonso told Ms. Moore to talk to Mr. Mangrum. Mr. Mangrum, Director Tucker and Dr. Martin improperly granted Mr. Funch's grievance against Ms. Moore on December 24, 2007 and failed to respond appropriately to Mr. Funch's calls about Ms. Moore.

Because Ms. Moore "filed charges with EEO," she was fired by Director Tucker on January 4, 2008 and by Dr. Martin on January 8, 2008. Dr. Martin put Ms. Moore's "picture up at the entrance for coworkers to see." Ms. Moore was fired because a committee made false charges that Ms. Moore had made threats, and the committee's chairman was Dr. Martin, and Director Tucker was a committee member.

### Allegations Against Nurse Afonso

When Ms. Moore attempted to contact Nurse Afonso about scheduling, Nurse Afonso placed a note on a desk that Ms. Moore was banned from working "B Medical" per Director Tucker. Ms. Afonso refused to talk to Ms. Moore about a shift change and indicated that she "would not talk to plaintiff due to her civil rights complaining" and directed Ms. Moore to Mr. Mangrum to address scheduling.

Despite knowing that Ms. Moore had complained about Mr. Funch and after Director Tucker banned Ms. Moore from Medical Clinic B, Ms. Fonso scheduled Ms. Moore to work Medical Clinic B where Mr. Funch worked. When Ms. Moore complained about not feeling safe and requested a reassignment, Nurse Fonso told Ms. Moore to take the assignment or go home without pay. Although

Nurse Afonso scheduled Ms. Moore to work a later shift after a morning shift, Ms. Afonso sent Ms. Moore home after her morning work.

Nurse Afonso became irate with Ms. Moore after Ms. Moore submitted a December 11, 2007 memorandum regarding schedule changes and childcare issues and indicated that she did not need to respond to Ms. Moore's memorandum in writing. On January 4, 2008, Ms. Moore learned from SHC that Nurse Afonso and Director Tucker had informed SHC that Ms. Moore had threatened them and that Ms. Moore should not telephone the CDCR facility or come onto the grounds.

Because Ms. Moore had filed discrimination charges and "exercised her rights," Nurse Afonso, Mr. Mangrum, Director Tucker and Dr. Martin conspired "to make up false allegations on threats because that's the only way plaintiffs [sic] charges would be dropped, and she would be terminated." Nurse Afonso further changed Ms. Moore's schedule and refused to answer memos regarding her schedule.

**Allegations Against Warden Hornbeak And Associate Warden Colmenero**

Warden Hornbeak and Associate Warden Colmenero issued a December 3, 2007 memorandum that Ms. Moore "is free from any further discrimination and retaliation." Because Associate Warden Colmenero "went on vacation shortly after plaintiff filed charges of discrimination, defendant did not follow policy and procedure when a complaint is filed." Warden Hornbeak fired Ms. Moore on January 9, 2008.

**Allegations Against Mr. Miller**

Mr. Miller "called the plaintiffs [sic] house after she was fired, telling her that he was doing an investigation, which defendant Miller never told plaintiff what the outcome was nor did he advise plaintiff of her civil rights."

**DISCUSSION**

**F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

Defendants contend that all purported SAC claims fail except Title VII hostile environment and retaliation claims against CDCR.

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether

5

a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

*Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Van Winkle*, 290 F.Supp.2d at 1162, n. 2.   In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the

authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[4] A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)). Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). A court properly may take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

With these standards in mind, this Court turns to defendants' challenges to the SAC's claims.

### **Eleventh Amendment Immunity**

Defendants contend that the Eleventh Amendment bars all claims against CDCR, a California entity, except Title VII claims.

According to the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens or Subjects of any Foreign State." The United States Supreme Court has noted: "The [Eleventh] Amendment . . . enacts a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject matter jurisdiction." *Idaho v. Couer d'Alene Tribe*, 521 U.S. 261, 117 S.Ct. 2028, 2033 (1997).

"The Eleventh Amendment prohibits federal courts from hearing suits brought against an

---

[4] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

8

unconsenting state. Though its language might suggest otherwise, the Eleventh Amendment has long been construed to extend to suits brought against a state by its own citizens, as well as by citizens of other states." *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991), *cert. denied*, 503 U.S. 938 (1992) (citation omitted); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 1122 (1996); *Puerto Rico Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S.Ct. 684 (1993); *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 677 (9th Cir. 1991).

The Eleventh Amendment bars suits against state agencies as well as those where the state itself is named as a defendant. *See Puerto Rico Aqueduct*, 506 U.S. at 144, 113 S.Ct. 684; *Natural Resources Defense Council v. California Dept. of Transportation*, 96 F.3d 420, 421 (9th Cir. 1996); *Brooks*, 951 F.2d at 1053; *see also Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) (Board of Corrections is agency entitled to immunity); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (Nevada Department of Prisons was a state agency entitled to Eleventh Amendment immunity).

In particular, the Eleventh Amendment bars:

1. FEHA claims, *Freeman v. Oakland Unified School Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) ("California has not waived it immunity to FEHA actions in federal court.");

2. 42 U.S.C. § 1983 claims, *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057 (1978); and

3. Common law claims, *U.S. v. Solinger*, 457 F.Supp.2d 743, 762 (W.D. Ky. 2006).

Based on Eleventh Amendment immunity, Ms. Moore is barred to pursue claims other than Title VII hostile environment and retaliation claims against CDCR. As a matter of law, the SAC's other purported claims against CDCR are subject to dismissal.

## Discrimination Claims Against CDCR

Defendants fault the absence of facts to support Title VII or FEHA discrimination claims against CDCR.

Title VII prohibits an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color . . ." 42 U.S.C. § 2000e-2(a)(1).

FEHA declares "as a public policy of this state that it is necessary to protect and safeguard the

9

right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race . . . color . . ." Cal. Gov. Code, § 12920. California Government Code section 12940(a) deems unlawful: "For an employer, because of race . . . color . . . to refuse to hire or employ the person . . . or to bar or to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

Defendants correctly note that the SAC is unclear whether it attempts to allege discrimination claims in that the SAC refers to "discrimination" and "discriminate" in what otherwise appear as hostile environment and retaliation claims.

Disparate-treatment cases present "the most easily understood type of discrimination," *Teamsters v. United States*, 431 U.S. 324, 335, n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), and occur where an employer has "treated [a] particular person less favorably than others because of" a protected trait. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-986, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). A disparate-treatment plaintiff must establish "that the defendant had a discriminatory intent or motive" for taking a job-related action. *Watson*, 487 U.S. at 986, 108 S.Ct. 2777.

The SAC fails to allege or to offer facts that CDCR subjected Ms. Moore to disparate treatment based on her race. As such, purported Title VII and FEHA discrimination claims are subject to dismissal.

**California Claims Act Requirements**

Defendants contend that the SAC's wrongful termination in violation of public policy and IIED claims are barred with Ms. Moore's failure to submit a claim to the Victim Compensation and Government Claims Board to comply with the California Government Claims Act ("Claims Act"), Cal. Gov. Code, §§ 810, et seq.

The Claims Act describes the specific steps which must be taken before a civil action for money or damages may be brought against a public entity. *Addison v. State of California*, 21 Cal.3d 313, 316, 146 Cal.Rptr. 224 (1978). The Claims Act requires timely filing of a proper claim as condition precedent to maintenance of an action. Cal. Gov. Code, §§ 905, 911.2, 945.4 (presentment of a written claim to the applicable public entity is required before a "suit for money or damages may be brought against a public entity"); *County of San Luis Obispo v. Ranchita Cattle Co.*, 16 Cal.App.3d 383, 390,

94 Cal.Rptr. 73 (1971). Claims against the state must be presented to the California Victim Compensation and Government Claims Board ("Board"). Cal. Gov. Code, § 915(b).

California Government Code section 911.2(a) provides: "A claim relating to a cause of action for death or for injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action."

The claims procedures applicable to actions against public entities are the same for actions against public employees. Cal. Gov. Code, §§ 950-950.6. Compliance with the claims statutes is mandatory. *Farrell v. County of Placer*, 23 Cal.2d 624, 630, 145 P.2d 570 (1944). Failure to file a claim is fatal to the cause of action. *Johnson v. City of Oakland*, 188 Cal.App.2d 181, 183, 10 Cal.Rptr. 409 (1961). "Failure to allege facts in a complaint demonstrating or excusing compliance with prelitigation governmental claims presentation requirements of the Tort Claims Act subjects the complaint to a motion to dismiss for failure to state a cause of action." *Comm. for Immigrant Rights of Sonoma County v. County of Sonoma,* 644 F.Supp.2d 1177, 1205 (2004). A "plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement." *State v. Superior Court*, 32 Cal.4th at 1243, 13 Cal.Rptr.3d at 534. "Accordingly, submission of a claim within [six months] is a condition precedent to a tort action against either the employee or the public entity." *Williams v. Horvath*, 16 Cal.3d 834, 838,129 Cal.Rptr. 453 (1976).

The Claims Act claim requirements apply to non-statutory employment discharge claims, *see Loehr v. Ventura County Community College Dist.,* 147 Cal.App.3d 1071, 1078-1079, 195 Cal.Rptr. 576 (1983), and to IIED claims, *see State v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1239, 90 P.3d 116 (2004).

The SAC does not allege Ms. Moore's compliance with Claims Act presentation requirements. Moreover, defendants offer the declaration of the Board's records custodian of inability to locate claims presented by Ms. Moore after a search of Board records. The absence of Claims Act compliance dooms the SAC's wrongful termination in violation of public policy and IIED claims.

### **CDCR Immunity To Common Law Claims**

Defendants argue that public entity immunity bars wrongful termination in violation of public

policy and IIED claims against CDCR.

The Claims Act does not provide that a public entity is liable for its own conduct or omission to the same extent as a private person or entity. *Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1128, 119 Cal.Rptr.2d 709, 722 (2002). California Government Code section 815(a) provides that a "public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person," "[e]xcept as otherwise provided by statute." Moreover, "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability," [e]xcept as otherwise provided by statute." Cal. Gov. Code, § 815.2(b).

Certain statutes provide expressly for public entity liability in circumstances that are somewhat parallel to the potential liability of private individuals and entities, but the Claims Act's intent "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances." *Brown v. Poway Unified School Dist.*, 4 Cal.4th 820, 829, 15 Cal.Rptr.2d 679 (1993); *see Becerra v. County of Santa Cruz*, 68 Cal.App.4th 1450, 1457, 81 Cal.Rptr.2d 165 ("in absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable"); *Michael J. v. Los Angeles County Dept. of Adoptions*, 201 Cal.App.3d 859, 866, 247 Cal.Rptr. 504 (1988) ("Under the Act, governmental tort liability must be based on statute; all common law or judicially declared forms of tort liability, except as may be required by state or federal Constitution, were abolished.")

In *Cochran v. Herzog Engraving Co.*, 155 Cal.App.3d 405, 409, 205 Cal.Rptr. 1 (1984), the California Supreme Court explained the absence of a public entity's common law liability:

> . . . under the statutory scheme in California, all government tort liability must be based on statute. . . . Government Code section 815, enacted in 1963, abolished all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the federal or state Constitution. Thus, in the absence of some constitutional requirement, public entities may be liable only if a statute declares them to be liable. Moreover, under subdivision (b) of section 815, the immunity provisions of the California Tort Claims Act will generally prevail over any liabilities established by statute. . . . In short, sovereign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute.

A court first determines whether a statute "imposes direct liability" on a defendant public entity. *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1111, 16 Cal.Rptr.3d 521, 547 (2004). "[D]irect

tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of [California] Civil Code section 1714." *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175, 1183, 80 P.3d 656 (2003). "In the absence of a constitutional requirement, public entities may be held liable only if a statute (not including a charter provision, ordinance or regulation) is found declaring them to be liable. . . . [T]he practical effect of this section is to eliminate any common law governmental liability for damages arising out of torts." *Thompson v. City of Lake Elsinore*, 18 Cal.App.4th 49, 62, 22 Cal.Rptr.2d 344 (1993).

As a matter of law, Ms. Moore is unable to pursue wrongful termination in violation of public policy and IIED claims against CDCR. Accordingly, such purported claims against CDCR are subject to dismissal.

## Wrongful Termination Claim Against The Individual Defendants

Defendants contend that the individual defendants are not subject to a wrongful termination in violation of public policy claim.

A "*Tameny* action for wrongful discharge can only be asserted against an employer. An individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy; rather, he or she can only be the agent by which an employer commits that tort." *Miklosy v. Regents of Univ. of Cal.*, 44 Cal.4th 876, 900, 80 Cal.Rptr.3d 690 (2008). "Therefore, a common law *Tameny* cause of action for wrongful termination, or a claim of retaliation, lies only against the employer, not against the supervisor through whom the employer commits the tort." *Lloyd v. County of Los Angeles*, 172 Cal.App.4th 320, 330, 90 Cal.Rptr.3d 872 (2009).

As a matter of law, Ms. Moore lacks a wrongful termination in violation of public policy claim against the individual defendants to subject such claim to dismissal.

## Title VII Claims Against The Individual Defendants

Defendants argue that the individual defendants are not subject to Title VII claims.

"The liability scheme[] under Title VII . . . limit[s] civil liability to the employer." *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587 (9th Cir. 1993). "Congress assessed civil liability only against an employer under Title VII" and the "statutory scheme itself indicates that Congress did not intend to

impose individual liability on employees." *Miller*, 991 F.2d at 587.

Defendants further contends that a claim for injunctive relief does not subject the individual defendants to Title VII liability. A "plaintiff who has merely alleged a past statutory violation and does not assert any likelihood that she will be subjected to a similar violation in the future or purport to represent a specific class of individuals that is in danger of discrimination from the defendant lacks the standing to seek injunctive relief." *Shafer v. Army & Air Force Exchange Service*, 376 F.3d 386, 398 (5th Cir. 2004).

Defendants are correct that the SAC alleges that Ms. Moore was terminated in 2008 and lacks facts that she would be subject to future conduct to violate Title VII. As a matter of law, Ms. Moore lacks a Title VII claim against the individual defendants to subject such claim to dismissal.

## FEHA Charge Filing Requirements

Defendants argue that the individual defendants are not subject to FEHA liability in the absence of adequate California Department of Fair Employment and Housing ("DFEH") charges.

FEHA requires a claimant to file a DFEH charge prior to pursuing a court action. *See* Cal. Gov. Code, § 12965(b). FEHA places a one-year limit from the time of the alleged unlawful practice to file a DFEH charge. *See* Cal. Gov. Code, § 12960(d) ("No complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred . . .") In the FEHA context, "failure to exhaust an administrative remedy is a jurisdictional, not a procedural, defect." *Okoli v. Lockheed Technical Operations Co.*, 36 Cal.App.4th 1607, 1613, 43 Cal.Rptr.2d 57 (1995) (internal quotations and citations omitted).

Defendants note that Ms. Moore's DFEH charge fails to attribute "racial harassment" to the individual defendants. The DFEH charge suggests that Director Tucker and Nurse Afonso retaliated against Ms. Moore in that they "stated I was fired because I threatened both of them."

Defendants note that the individual defendants are not subject to FEHA liability for retaliation. "[W]e conclude that the employer is liable for retaliation under section 12940, subdivision (h), but nonemployer individuals are not personally liable for their role in that retaliation." *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158, 1173, 177 P.3d 232 (2008). Defendants continue that FEHA

individual liability is limited to harassment/hostile environment claims.[5] Defendants conclude that in the absence of a timely DFEH charge to allege the individual defendant's harassment, Ms. Moore lacks a viable FEHA claim against them.

Defendants are correct. The individual defendants are not subject to a viable FEHA claim identified in Ms. Moore's DFEH charge. Director Tucker and Nurse Fonso's purported retaliation is not actionable under FEHA. The DFEH charge identifies no other individual defendant. As a matter of law, FEHA claims are barred against the individual defendants.

**FEHA Discrimination And Retaliation Claims Against The Individual Defendants**

Defendants continue that the individual defendants are not subject to liability for FEHA discrimination or retaliation in that liability for such claims is limited to employers despite whether certain individual defendant's alleged wrongs arose during their conduct as supervisors or managers.

In *Reno v. Baird*, 18 Cal.4th 640, 663, 76 Cal.Rptr.2d 499 (1998), the California Supreme Court concluded "that individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts." California Government Code section 12940(a) "indicates that the Legislature did not intend individual supervisory employees to be held liable for employment discrimination. . . . The prohibition regarding discrimination under FEHA applies only to 'an employer.'" *Walrath v. Sprinkel*, 99 Cal.App.4th 1237, 1241, 121 Cal.Rptr.2d 806 (2002), *disapproved on other grounds*, *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158, 177 P.3d 232, 72 Cal.Rptr.3d 624 (2008).

The California Supreme Court has explained the rationale not to hold supervisors subject the FEHA discrimination liability:

> We do not decide merely whether individuals should be held liable for their wrongdoing, but whether all supervisors should be subjected to the ever-present threat of a lawsuit each time they make a personnel decision. Litigation is expensive, for the innocent as well as the wrongdoer. By limiting the threat of lawsuits to the employer itself, the entity ultimately responsible for discriminatory actions, the Legislature has drawn a balance

---

[5] California Government Code section 12940(j)(3) provides: "An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action."

15

> between the goals of eliminating discrimination in the workplace and minimizing the debilitating burden of litigation on individuals.

*Reno*, 18 Cal.4th at 663, 76 Cal.Rptr.2d 499.

In *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 64-65, 53 Cal.Rptr.2d 741 (1996), the California Court of Appeal further explained:

> We conclude, therefore, that the Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management. . . .This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA.

In *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158, 1173, 72 Cal.Rptr.3d 624 (2008), the California Supreme Court noted that "*Reno*'s rationale for not holding individuals personally liable for discrimination applies equally to retaliation . . . FEHA does not make individuals personally liable for discrimination." The California Supreme Court concluded "that the employer is liable for retaliation under [California Government Code] section 12940, subdivision (h), but nonemployer individuals are not personally liable for their role in that retaliation." *Jones*, 42 Cal.4th at 1173, 72 Cal.Rptr.3d 624.[6]

Defendants are correct that the individual defendants are not subject to liability for FEHA discrimination and retaliation to warrant dismissal of such claims against the individual defendants.

### **Procedural Due Process**

Defendants contend that a purported procedural due process claim against CDCR is barred in that California is not a person subject to a 42 U.S.C. § 1983 ("section 1983") claim.

"§ 1983 provides a cause of action for all citizens injured by an abridgment of those protections" under the Fourteenth Amendment's Procedural Due Process Clause. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120-121, 112 S.Ct. 1061 (1992). However, a section 1983 procedural due process

---

[6] California Government Code section 12940(h) prohibits an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

claim does lie against CDCR:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, *Welch v. Texas Dept. of Highways and Public Transportation*, 483 U.S. 468, 472-473, 107 S.Ct. 2941, 2945-2946, 97 L.Ed.2d 389 (1987) (plurality opinion), or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity. That Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect was made clear in our decision in *Quern*. Given that a principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims, and that Congress did not provide such a federal forum for civil rights claims against States, we cannot accept petitioner's argument that Congress intended nevertheless to create a cause of action against States to be brought in state courts, which are precisely the courts Congress sought to allow civil rights claimants to avoid through § 1983.

*Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304 (1989).

Moreover, defendants correctly note the SAC's absence of facts to support elements of a procedural due process claim.

"The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701 (1972). A Fourteenth Amendment due process claim under 42 U.S.C. § 1983 ("section 1983") may address "procedural rights" of "guarantee of a fair procedure" to address deprivation of a "life, liberty or property" interest "*without due process of law.*" *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975 (1990). To state a section 1983 claim based on procedural due process, a plaintiff must allege: (1) deprivation of a constitutionally protected liberty or property interest; and (2) a denial of adequate procedural protections. *Brewster v. Bd. of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 982 (9th Cir. 1998); *see Wright v. Riverland*, 219 F.3d 905, 913 (9th Cir. 2000).

Defendants challenge the FAC's failure to plead a protected property interest. In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701 (1972), the U.S. Supreme Court explained the source and nature of constitutionally cognizable property interests:

> Property interests . . . are not created by the Constitution. Rather they are created and

their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Under California law, an employee's term of employment, when not specified in an employment contract or other document or oral agreement, is considered a term that may be terminated "at will" by either party. Cal. Labor Code, § 2922 ("An employment, having no specified term, may be terminated at the will of either party on notice to the other.") "Where state employees serve at the will of the appointing authority, however, there is no such reasonable expectation of continued employment, and thus no property right." *Brady v. Gebbie*, 859 F.2d 1543, 1548 (9th Cir. 1988).

Defendants correctly point to the absence of SAC facts to rebut the at-will presumption, especially given the SAC's characterization of Ms. Moore as a "registry contract nurse" lacking civil service status and thus a property interest in continued employment. A procedural due process claim fails with no facts of Ms. Moore entitlement to due process for her registry work.

### Absence Of Allegations As To Mr. Miller

The SAC includes a bare allegation that "Defendant Miller called the plaintiffs [sic] house after she was fired, telling her that he was doing an investigation, which defendant Miller never told plaintiff what the outcome was nor did he advise plaintiff of her civil rights." Defendants note the absence of facts as to Mr. Miller's investigation or to support a breach of duty. Defendants are correct that the SAC "has simply failed to plead sufficient facts to state any claim" against Mr. Miller. The SAC lacks a viable claim against Mr. Miller, and nothing warrants an attempt to amend a purported claim against him.

### Absence Of Allegations As To Warden Hornbeak And Associate Warden Colmenero

The SAC alleges that:

1. Warden Hornbeak and Associate Warden Colmenero issued a December 3, 2007 memorandum that Ms. Moore was "free from any further discrimination and retaliation"; and

2. Because Associate Warden Colmenero "went on vacation shortly after plaintiff filed charges of discrimination, defendant did not follow policy and procedure when a

complaint is filed."

Defendants are correct that the SAC "fails to plead supporting facts related to these allegations in a context where they could state a claim under any particular theory" against Warden Hornbeak or Associate Warden Colmenero. The SAC lacks a viable claim against Warden Hornbeak or Associate Warden Colmenero, and nothing warrants an attempt to amend purported claims against them.

## CONCLUSION AND ORDER

As discussed above, the SAC's only conceivable claims are under Title VII for hostile environment and retaliation against CDCR only. As such, this Court:

1. DISMISSES with prejudice all other purported claims alleged in the SAC;
2. DIRECTS the clerk to enter judgment against plaintiff Candy Q. Moore and in favor of defendants Tina Hornbeak, Gloria Colmenero, Curtis Mangrum, Judy Tucker, Daun Martin, M.D., Marihelen Afonso and Walter Miller in that there is no just reason to delay to enter such judgment given that Ms. Moore's claims against the individual defendants and their alleged liability are clear and distinct from claims against and liability of CDCR. *See* F.R.Civ.P. 54(b); and
3. ORDERS CDCR, no later than June 29, 2011, to file and serve an answer to the SAC's Title VII hostile environment and retaliation claims.

IT IS SO ORDERED.

**Dated:   June 13, 2011**              /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE